Good morning, Your Honor. May it please the Court. My name is Donna Rucker, for the record, and I represent Mr. Abilt. And we bring this appeal because we believe that the trial court erred in dismissing Mr. Abilt's case on summary judgment. And we assert this intention for three basic reasons. First, the trial court erred when it found that Mr. Abilt, because of the state secrets doctrine, could not establish and cannot establish the facts necessary for the claims advanced, and that the appellee cannot defend the claims in this case. We also believe that the court erred in finding that the appellant's claims would present an unjustifiable risk of disclosure of confidential information. And finally, we believe that the record shows in this case to show that this matter can go forward without compromising the confidentiality or providing privilege information. Tell me this. What's different about Abilt II from Abilt I? With respect to the difference, Your Honor, as what the court focused on specifically, there isn't any difference with respect to the fact that the confidential and privilege information presented in Abilt I will play a role in Abilt II. So to the extent that the court concluded that whatever information is alleged to be needed by the defendant would be privileged, there isn't any difference. What we are articulating in this particular case where there is a difference is you do not need to use the privileged information alleged to be necessary for the claims advanced by Mr. Abilt to go forward. Proclusion issues with respect to any assertions as to whether the privilege was properly presented, but certainly not with respect to the allegations in the case. They are totally different. In the Abilt I case, Mr. Abilt was alleging that he was wrongly terminated from his position as a covert secret CIA operative. He did. In this particular case, he is alleging a different claim. That is correct. And he actually, with respect to the issue of whether or not this matter could go forward without the revealing of any kind of state secrets would not be precluded because in this particular case, Your Honor, what we have at issue here is the issue of narcolepsy. What we had at issue in Abilt I was whether or not he was performing his duties and therefore should not be terminated. Was Abilt I not also a disability discrimination claim? With respect to certain events, yes, it was. If Abilt I says you can't litigate, it turns out, you can't litigate a disability discrimination claim without knowing what the job functions are. It is very hard to figure out whether a disability can be reasonably accommodated unless you know what the job is. Why isn't that preclusive here? The court concluded that the issues concerning whether or not his job duties were at issue, what we believe in this case with respect to Abilt II is we're talking about the specific denial of the ability to go TDY to a war zone with the condition narcolepsy being at issue but also with the fact that an MSO officer, medical services officer, had cleared him with the details of the duties being provided. So I would argue that Mr. Abilt has from the record that exists in this particular case administratively alleged many particular events and instances of discrimination. And so with respect to this Abilt II case, we are speaking specifically about from 2009 forward where there were requests to go TDY to a war zone. Mr. Abilt is presenting and the agency's position, the appellee's position that somehow or another there would be a problem, the record is clear that performance was not raised as an issue. And so with respect to the disability claim advanced in Abilt II, dealing with issues of unfair treatment from 2009 to when he was actually allowed to go TDY to a war zone in 2012. I agree with you that the essential facts so far as the claims from Abilt I and Abilt II differ. The question is do the essential facts that relate to the state secrets issue, do they differ? And if so, how do they differ? Okay, understood, Your Honor. So with respect to how the particular issues with respect to the state secrets doctrine change, will change in terms of what we're using? Both claims require comparative analysis and assessment of the plaintiff's performance. Both claims require that. And the risk of disclosing the same kind of privileged information. So if I may answer the initial question posed. That is the question. Those are the things that are included within the state secrets. The question is how is it different from this case, from that case? Okay. So what I offer to you, Your Honor, in response to that is with respect to the documents that were being offered and that were reviewed with respect to the issues pertaining to Abilt I had to do with the performance records, the mission and the duties that Mr. Abilt may have been involved in. I do understand that in particularly with respect to Abilt II, there is an assertion and an allegation that those records also apply. We say here in Abilt II they do not. And so we say that because whereas in Abilt I there may have been a concern about moving forward to challenge a proposal for termination using the documents presented. We're not proposing and the documents are not being used to address the specific issues. So whereas now the appellee is offering the fact that we need to talk about performance evaluations, we need to talk about mission, what we're saying in this case is you don't need to talk about any of that. Are you saying that this case can be decided without assessing Mr. Abilt's job functions? And how could that be? So in response to what Judge Nguyen asked about the disability claim, let's start with that. One of the things that will have to be established is that he was able to perform the duties of the position. Our position is that the record is clear in this particular case that this is not so much challenged by the agency because Mr. Abilt was allowed to go TDY overseas. And if performance was an issue. It is challenging whether his disability can be accommodated given the job functions, but we can ask them that. There is a challenge to whether or not. My question is whether it's a reasonable challenge and it is whether or not the record supports considering that challenge as a legitimate one. So you believe your position is this disability discrimination claim and this claim for a reasonable accommodation can be decided without any assessment of Mr. Abilt's job duties? I'm not saying it can be decided without the assessment. I'm saying the record that it contains. But Abilt 1 held we can't consider his job duties are privileged. Abilt 1 held that his job duties are privileged. The distinction in Abilt 2 is whether there is actually a need to review these documents that have been presented in this particular case. There is a need, I think, because the government has a right to bring this privileged information out as discussed in Abilt 1 defense. The information that the agency seeks to bring out, the problem that an appellant has or a plaintiff at a lower level has with the presentation or the raising of the state secrets doctrine is, I think, very premier in this particular case. There is a record both at the administrative level and at the trial court level concerning why Mr. Abilt was alleged to be prevented. Why it was that he was prevented from going TBY to a war zone. And specifically in that record, performance is not alleged as the reason why. There are delays and the record shows specifically allegations that says we need to observe and make sure he's managing his narcolepsy. There are two separate presentations to the medical services officers, officer for the CIA, where that officer is given both the mission, the duties, and the details of what will be expected of Mr. Abilt. And what we know, what this record shows is that each time on two separate occasions the medical services officer said he is going to go TBY to a war zone. I think what is also important in Abilt 2 is the fact that we come to the table with a 2009 grant of the ability to go TBY to a war zone that has been pulled away by the supervisor who we allege is basically considering his disability for why this TBY to the war zone is pulled. And in that instance, if performance was in fact an issue, then that would not have been granted. Use of the medical records alone, granted the record says the CIA doctor cleared him, but as I understand the CIA claims that those records won't establish whether or not he's performing any other essential function at a level that meets the CIA's expectations without the previous documents. I do understand that's the allegation, but I think we also have to look at the fact that the CIA itself did in fact grant the right for a TDY assignment subsequent to these allegations that performance was allegedly an issue. So it really belies what is actually being stated. And what is about to allude, what I am alluding to and was about to say is that there is never going to be a circumstance where you cannot have or you will not have a case that has a record below that may not deal with any issues pertaining to state secrets, but a complaint is filed. And at that point, you have a defendant who will come in and stand before the court and say, to defend this matter, I need to now look at all of these other documents. And the fact that those other documents in fact may contain state secrets is really not where you stop. It's actually whether or not it is necessary. These documents are necessary. What we do have with respect to Mr. Abel additionally is his claim for retaliation. And in this particular case, we do not have a requirement to deal with the issue of performance with respect to his retaliation claim. Mr. Abel can use evidence that is not privileged or confidential to show that he engaged in adverse action. On this record and in this case, the adverse action would be the repeated and continued delays that he encountered after he complained about having the 30-day initial grant of a TDY assignment delayed. And at this point, there isn't any need to talk about the comparative evidence per se, because for purposes of establishing the likelihood that what was experienced is related to the EEO activity, we can use proximity. In this case, we're talking and the record reflects that we're looking at weeks apart from when a particular event occurred. You have Mr. Abel being delayed 30 days. Because he complains, you have a few weeks later, he's now delayed six months. Then he's told, well, now you can't go to a war zone for 12 months and overseas for six months. And so it is the delays that we're talking about that would establish the adverse action. And the record has to have some benefit for a plaintiff. And the record in this case shows that Mr. Abel did not have any indication or suggestion by the agency, by the appellee in this case, that his performance was an issue. You're saying the government does not have a right to raise this privileged information insofar as a retaliation claim? I'm not saying they don't have a right to raise it. I'm saying that our position is we do not need that information to present a retaliation claim. And for what we are alleging in this particular case, the appellee does not need it. From the perspective of what you have to present, I was asking in terms of does the government have the right to raise this privileged information, state secrets, insofar as the retaliation? The right would be there, Your Honor, if there was a need was what I'm saying. I don't believe that, and this is what... Do they have a right to show that the action was justified by permissible reason? They would have a right to do that. And my submission to you is that this record shows what was stated then. It is changing now. As a result of this complaint that has been filed, we have a record below through a federal investigation that was conducted in this particular case, and it shows why Mr. Abel was delayed. And at this particular point, the record shows the delay and the comments associated with why you're being delayed to be directly connected to the medical condition, the narcolepsy, which is disability discrimination. But then the government has to be able to say, no, it's not disability discrimination because this is something that can't be justified. You're basically saying you should win your case, so there should be no defense because you should just win. But in order to litigate this case, the government's going to try to show that that's wrong, that that doctor's letter doesn't actually clear him to perform the essential functions of his job. And I don't see how they can do that if they can't say what his job is. I do understand that that's what the government would like, but I think we have to give some consideration to the fact that performance was not considered to be an issue in this case because TDY to an overseas assignment, I have a different question about performance, but I'm not even asking about that now. I'm just talking about how is the government supposed to be able to defend a case of disability discrimination without being able to say what the job is. I would think, let's take a hypothetical disability, let's say it's not narcolepsy, let's say someone has trouble walking, and then you'd want to be able to say, well, this isn't a desk job, this is a job that requires a lot of walking around, so I'm not going to be able to accommodate that, but they can't do that. Well, in this case, Your Honor, what I'm suggesting and what I'm submitting is that that is exactly what the medical services officer did. When there was a question about whether or not Mr. Abel would be able to perform and to take this TDY assignment, the agency, the appellee in this case, took Mr. Abel's medical circumstances, took the mission, the details, what Mr. Abel will have to do, everything was provided, and what was received back was a clearance for the performance of those duties, so I don't think we're preventing the agency. I'm just saying there's already a record of that having been considered by the agency, the medical services officer. I see my time is up. Are you saying that the medical doctor knew the details of the assignment? That is what I'm saying. How do you know that? Because the record in this particular case establishes that to get the ability to go, the medical services officer had to be told of Mr. Abel's condition and what he would be required to do so that he could get cleared to do it. Thank you. Jamie Lilly for the Central Intelligence Agency. Mr. Abel's case and the government's defense, Mr. Abel's claims and the government's defense depend on privileged information, as the court found in Abel 1, and as this court has found in a very similar case in the Tenet v. Religious. The issue of whether the information that the government asserts is privileged is the same. The relationship between that issue and the particular claims is very similar, Your Honor. Yes, Your Honor. There are different claims. The claims here are that Mr. Abel was not selected for a particular assignment or that he was treated differently than other similarly situated co-workers who did not have narcolepsy. And the government would be required to show legitimate non-discriminatory reasons for his non-selection to a particular assignment. Would you have the right to rebut the medical officer's finding? We would presumably be required to present privileged information related to sensitive agency decisions about why someone was chosen over another, the decision-making associated with the selection of a particular person for a particular assignment, the nature of those responsibilities, all of that context that Judge Wilkinson and the Sterling Court found to be very similar. And the fact that a certain case said it was necessary to make out an employment discrimination claim on very similar facts in that case would be required here. So even if the doctor knew the details of the mission and provided that information clearly, why would you need to use the privileged information? Your Honor, it stands to reason that sensitive agency decision-making about who to send and where to send would depend on a number of things. Possibly a medical clearance, comparator information about who the other candidates might be for a particular assignment, what the particular assignment was at any particular point in time, job performance would factor into those decisions. Presumably all of that would require resort to privileged information. Are you saying that in light of the doctor's letter, the doctor's clearance, you would not be in a position to argue that his disability could not be accommodated in light of the functions of the job, that the doctor has said, yes, in fact, it could be accommodated and that you're kind of bound by that? Assuming it was that the allegations that he was medically cleared for a particular assignment were true, could we dispute that his disability could be accommodated consistent with the essential functions of that assignment? Your Honor, in light of the doctor's clearance, is that something? It would depend on what the clearance determination was made, what information the doctor was privy to, what was the nature of the clearance? Is it your understanding that the doctor, do you share your colleague's understanding that the doctor had access to all of the details of the overseas posting when he gave the medical clearance? My understanding is that the allegations are that Mr. Abel was cleared at one point in time for particular types of assignments. If those are true, if those allegations are in fact true, it's not clear to me that that would apply at a different point of time, that that would obviate any other considerations that the agency might have about whom to send, when to send, and how the work situation in a particular assignment may or may not be able to accommodate a particular disability. Your Honor, Mr. Abel has repeated the assertion that there is non-presentation of a particular disability. Non-privileged information, as this Court and others have recognized, the availability of non-privileged information, where it is so intertwined with privileged information, risks harm to national security, and so that information, if that is the case, then dismissal at the outset is appropriate, even if a plaintiff could point to isolated or very general types of information where it is so intertwined, as it is in this case, that dismissal at the outset is appropriate. So is it your position that in light of the Tenet case and your arguments today, I mean is the basic idea that there are just going to be some CIA employees to whom the discrimination laws don't apply? No, Your Honor. There are certain situations and certain claims brought by certain employees that unfortunately cannot be litigated, depending on the facts, without privileged information, where those can't be litigated in those rare cases, dismissal is appropriate. But no, it is not our contention that the discrimination laws would not apply in those circumstances, and as Judge Wilkinson did in the Sterling case, took comfort in the fact that there is, that the CIA has made available agency processes, and so that there are some, there is some recourse and a remedial scheme that, that, that, that, that can be used to eliminate some of those claims that certain employees can't avail themselves of. It does seem that if you can't, if the description of the job, as well as performance records are privileged, it's going to be awfully hard to litigate, putting to one side the CIA's internal procedures, but it's going to be very hard to litigate in court an anti-discrimination claim. Yes, in the class of cases where you're talking about a covert employee who's seeking a clandestine assignment to an overseas assignment to a war zone, that yes, that is the very rare category of cases in which dismissal is appropriate, because the facts that are required to litigate this case to judgment are privileged, and the risks to national security associated with the case are such that the Supreme Court has recognized that information must be removed from the case, and accordingly, as this Court has recognized dismissal is appropriate at the outset. Thank you very much. We'll hear from Ms. Ruffley. You have a few minutes. Your Honors, we'll stand on the presentation provided and would respectfully ask this Court to remand this case to provide Mr. Abel an opportunity to present his case on the merits, and we ask that the decision, therefore, of the Court below be reversed. Thank you for your time today. This Honorable Court stands adjourned until tomorrow morning. God bless the United States and this Honorable Court.
judges: James A. Wynn Jr., Henry F. Floyd, Pamela A. Harris